O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TENITA PARSHA, | ) | Case No. EDCV 13-1799-OP |
| Plaintiff, | ) ) | |
| v. | ) | MEMORANDUM OPINION AND |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) | ORDER |
| Defendant. | ) ) ) | |

    The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

---

   [1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (ECF Nos. 9, 10.)

   [2] As the Court advised the parties in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 7 at 3.)

1

I.

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the ground for reversal and/or remand are:

(1) Whether the Administrative Law Judge ("ALJ") properly considered the opinion of Plaintiff's treating physician, Ronald Rodriguez, M.D.; and

(2) Whether the ALJ properly considered Plaintiff's subjective symptom testimony.  (JS at 4.)

II.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401 (citation omitted).  The Court must review the record as a whole and consider adverse as well as supporting evidence.  Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld.  Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

III.

**DISCUSSION**

**A.    The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairment of seizure disorder.

(Administrative Record ("AR") at 31.)

  The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform the full range of work at all levels, except that she is limited to non-complex routine tasks; no interaction with the public; must not perform tasks that require hypervigilence; cannot perform fast paced work such as rapid assembly, or conveyor belt work; and must be subject to appropriate seizure precautions. (Id. at 32.)

  Relying on the testimony of the vocational expert ("VE"), the ALJ determined that Plaintiff was able to perform such work as hospital cleaner (Dictionary of Occupational Titles ("DOT") No. 323.687-010); hospital food service worker (DOT No. 319.677-014); and dealer accounts (DOT No. 241.367-038). (AR at 36.)

**B. The ALJ Properly Considered and Weighed the Opinion of the Treating Physician.**

  In a December 11, 2010, "Seizure Residual Functional Capacity Questionnaire," Dr. Rodriguez stated that Plaintiff suffered from four to five grand mal and petit mal seizures per month, which were generalized and localized. (Id. at 206.) Dr. Rodriguez noted that precipitating factors included stress, depression, worry, tiredness, and sleepiness, and that the typical seizure lasted about one minute. (Id. at 206-07.) Dr. Rodriguez indicated that post-seizure manifestations such as confusion, headaches, muscle strain, paranoia, exhaustion, and irritability could be expected to last about twenty minutes, and that the seizures interfere with Plaintiff's daily activities. (Id. at 207.) Dr. Rodriguez also noted the following restrictions: Plaintiff would need more supervision at work than an unimpaired worker; she suffers from mental problems; she would need unscheduled breaks every day in an eight-hour workday that would last for fifteen minutes; she was incapable of even a low stress job; and she would miss about four days of work per month. (Id. at 209.)

The ALJ considered, but did not give significant weight to, Dr. Rodriguez's opinions:

> Dr. Rodriguez did not document positive objective clinical or diagnostic findings to support his functional assessment. Dr. Rodriguez's opinion is not given great weight because, despite the length of time he treated the claimant, his assessment of functional limitations is not well supported with objective evidence, and his assessment is not consistent with the record as [a] whole including the claimant's activities of daily living, which are reduced by her impairments but not to the degree suggested by Dr. Rodriguez's functional assessment.

(Id. at 34-35.) Instead, the ALJ gave significant weight to the opinions of the state agency physical medical consultants on review and on reconsideration. (Id. at 34.) The ALJ noted that the opinions of those physicians were "generally consistent in that they all assess the claimant is able to perform work at any exertional level with appropriate seizure precautions. (Id.)  The ALJ also noted that their opinions were "all reasonable and supported by the record as a whole." (Id.)  Finally, the ALJ "adopted further restrictions in order to take into consideration the claimant's subjective complaints regarding stress and cognitive slowing from the seizures." (Id.)

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence, for rejecting the opinions of her treating physician, Dr. Rodriguez. (JS at 7.) Plaintiff contends that the ALJ did not set forth "any explanation [for rejecting Dr. Rodriguez's opinions] with the possible exception of citation to Ms. Parsha's daily activities." (Id. at 8.) Plaintiff also notes that Dr. Rodriguez's opinion "is supported objectively by the presence of an EEG dated April 30, 2009 demonstrating epilepsy," as well as by blood levels and observation. (Id. at 8-9 (citing AR at 588).)

In evaluating medical opinions, the case law and regulations distinguish

among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir.2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). The ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632-33; SSR 96-2p. Thus, where an examining physician's opinion is contradicted by another doctor, the ALJ must still provide specific and legitimate reasons supported by substantial evidence to properly reject it. Lester, 81 F.3d at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)).

     Here, the ALJ properly rejected Dr. Rodriguez's opinions regarding Plaintiff's limitations, finding they were not supported by clinical findings or the medical record as a whole. See 20 CFR 404.1527(c)(3); cf Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (lack of clinical findings is specific and legitimate reason for rejecting treating physician's opinions); Khounesavatdy v. Astrue, 549 F. Supp. 2d 1218, 1229 (E.D. Cal. 2008) ("[I]t is established that it is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion.") (citing Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995); Matney v. Sulllivan, 981 F.2d 1016, 1019 (9th Cir. 1992); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

     Preliminarily, although Plaintiff argues that Dr. Rodriguez's opinion "is

supported objectively by the presence of an EEG dated April 30, 2009 demonstrating epilepsy," as well as by blood levels and observation (JS at 8-9), these tests merely serve to demonstrate that Plaintiff indeed suffers from epilepsy, a fact about which there is no dispute.

What is missing from Dr. Rodriguez's clinical findings and the medical record as a whole is support for his more extreme opinions regarding Plaintiff's functional limitations, e.g., that she would need unscheduled daily breaks for fifteen minutes at a time, that she could not perform even low stress work, and that she would miss about four days of work per month. (AR at 208-09.)

As noted by the ALJ, the medical evidence shows routine, conservative treatment for seizures, and also that Plaintiff's seizures are fairly well controlled by medication. (Id. at 33.) The ALJ also noted that Plaintiff was not consistently compliant with her medication (see, e.g. id. at 590 (on April 1, 2009, Plaintiff admitted she "wasn't good about taking her meds"). Indeed, a review of the record shows that many of her seizures occurred after she had run out of her medication (see, e.g. id. at 246, 261, 268, 271, 305, 361, 384, 619).

Nor is Plaintiff's (or Dr. Rodriguez's) reported frequency of seizures supported by the record. For instance, in June 2008, Plaintiff reported that she had not had a seizure since March 2008 (id. at 307); after a seizure in January 2009 (id. at 318), she did not have another seizure until August 2009 (id. at 310, 318); her next seizure was in April 2010 (id. at 361, 501); and in August 2011 (after a petit mal seizure), Plaintiff reported she had not had a grand mal seizure since spring (April) 2010 (id. at 581). The seizures Plaintiff experienced in June (id. at 645) and July of 2011 (id. at 634) were also of the non-convulsive type. Treatment notes in August (id. at 525, 579) and November 2011 (id. at 526), show that Plaintiff's seizure disorder was stable and that she had not experienced seizures (id. at 526, 526, 579). At the hearing, Plaintiff testified that she had started taking Keppra about a year before the hearing, and since then, her seizures had been

better controlled.  (Id. at 55-56.)

The ALJ also noted that Plaintiff's reported activities of daily living were inconsistent with the extreme limitations assessed by Dr. Rodriguez.  (Id. at 35.)  In an exertion questionnaire completed in 2010, Plaintiff generally stated that she takes care of her two daughters, aged eleven and fourteen; cooks; cleans; reads books; takes the bus 3-4 times a week, often to doctor's appointments, to pick up her refills, or to go to the store; and watches television.  (Id. at 32, 57-60, 190-94.)  Sometimes she is "out all morning on the bus."[3]  (Id. at 191.)  At the hearing, she also testified that she cooks, helps with cleaning, goes to the grocery store with her mother, goes to church every Sunday, and does the laundry.  (Id. at 57-60.)  The Court finds that this constituted a specific and legitimate reason based on substantial evidence in the record for giving little weight to Dr. Rodriguez's opinions.  See, e.g., Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected treating physician's opinion of disability that was inconsistent with claimant's level of activity).

Based on the foregoing, the Court finds that the ALJ provided specific and legitimate reasons for rejecting Dr. Rodriguez's opinions of Plaintiff's functional limitations.  Thus, there was no error.

**C.    The ALJ Properly Considered Plaintiff's Credibility.**

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings.  Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that

---

[3]  Plaintiff testified that she stopped taking the bus alone at the end of 2011.  (AR at 52.)

claimant was not credible is insufficient).

Once a claimant has presented medical evidence of an underlying impairment which could reasonably be expected to cause the symptoms alleged, the ALJ may only discredit the claimant's testimony regarding subjective pain by providing specific, clear, and convincing reasons for doing so. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991).

An ALJ may properly consider "testimony from physicians . . . concerning the nature, severity, and effect of the symptoms of which [claimant] complains," and may properly rely on inconsistencies between claimant's testimony and claimant's conduct and daily activities. See, e.g., Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (citation omitted). An ALJ also may consider "[t]he nature, location, onset, duration, frequency, radiation, and intensity" of any pain or other symptoms; "[p]recipitating and aggravating factors"; "[t]ype, dosage, effectiveness, and adverse side-effects of any medication"; "[t]reatment, other than medication"; "[f]unctional restrictions"; "[t]he claimant's daily activities"; "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment"; and "ordinary techniques of credibility evaluation," in assessing the credibility of the allegedly disabling subjective symptoms. Bunnell, 947 F.2d at 346-47; see also Soc. Sec. Ruling 96-7p; 20 C.F.R. 404.1529 (2005); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly rely on plaintiff's daily activities, and on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication); Johnson, 60

F.3d at 1432 (ALJ may properly rely on the fact that only conservative treatment had been prescribed); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities and the lack of side effects from prescribed medication); Tonapetyan, 242 F.3d at 1148 (ALJ properly found that the claimant's "tendency to exaggerate" was a factor supporting his determination that she was not credible).

Plaintiff contends that her testimony establishes greater limitations than the RFC determined by the ALJ and that he improperly rejected her subjective complaints. (JS at 15-23.) Plaintiff states that she suffers from grand mal seizures approximately every three months and petit mal seizures three to four times a week. (AR at 49, 54, 56.) She testified that she loses consciousness when she has seizures, and that afterwards, she feels confused and dizzy. (Id. at 49, 50). She also experiences headaches and is tired for the rest of the day. (Id. at 51, 57.)

First, citing the ALJ's "standard" language regarding credibility,[4] Plaintiff complains that this credibility finding and the reasoning for it are nothing more than improper "generalities." (JS at 18.) Specifically, she alleges that the ALJ merely referred to Plaintiff's activities of daily living as being the "same as those necessary for obtaining and maintaining employment and . . . inconsistent with the presence of an incapacitating or debilitating condition." (Id. (citing AR at 33.) Plaintiff contends that even if this constituted a valid reason, the ALJ failed to point to which of her daily activities, such as doing the laundry, using a stove, and going to church on Sunday, demonstrate the ability to maintain full-time employment. (Id. (citing Smolen, 80 F.3d at 1284 ("The ALJ must state

---

[4] "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment herein." (AR at 33.)

9

specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").) The Court agrees with Plaintiff that this reason could have been more fully developed. However, in combination with the other factors considered by the ALJ, any error was harmless. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (ALJ's error in providing legally insufficient reasons for rejecting claimant's credibility was harmless where ALJ gave other, sufficient reasons).

Next, the ALJ stated that Plaintiff failed to follow treatment recommendations, and that there were "several" occasions when Plaintiff was noncompliant with her medication. (AR at 34.) Plaintiff claims that while these can be valid reasons for discounting credibility, in this case, the ALJ only cited "a few instances over the entire period under review when [Plaintiff's] medication compliance was questioned." (JS at 20 (citing AR at 34).) Plaintiff also states that there is nothing in the record to show that she had been noncompliant after July 2010. (Id.) The Court's review of the record shows that in April 2009, Plaintiff acknowledged she was not "good about taking her meds" (AR at 590), and that the seizures she experienced in September 2007, December 2007, April 2008, February 2009, August 2009, and October 2011 (a "breakthrough" seizure), all occurred after she had failed to take her medication. (See, e.g., id. at 33-34; see also id. at 246, 251, 271, 305, 361, 619.) As further noted by the ALJ, on at least one occasion in June 2008, Plaintiff had "allowed herself to run out of her seizure medication." (Id. at 34 (citing id. 361); see also id. at 246, 251, 271, 305, 361, 619.) The ALJ reasonably concluded that Plaintiff's non-compliance with her prescribed treatment supported a conclusion that her seizure symptoms were not as severe as she claimed, and/or she was unwilling to do what is necessary to improve her condition. (Id. at 33); see also 20 C.F.R. §§ 404.153(b), 416.930(b) ("if you do not follow the prescribed treatment without a good reason, we will not find you disabled").

1    Finally, Plaintiff takes issue with the ALJ's finding that the objective
2 evidence of record and lack of more aggressive treatment or surgical intervention[5]
3 diminishes her credibility. (JS at 20-21 (citing AR at 33).) Plaintiff notes that the
4 record contains evidence of an abnormal EEG and states that requiring any
5 additional objective support "is simply not appropriate." (Id. at 21-22.) Again,
6 there is clearly no dispute about the existence of Plaintiff's seizure disorder.
7 Additionally, as previously discussed, the records do not support Plaintiff's
8 statements regarding the frequency of her seizures. Although Plaintiff stated at the
9 hearing that she has a grand mal seizure once every three months (AR at 54), such
10 seizures appear to have occurred much less frequently – in September 2007,
11 December 2007, April 2008, February 2009, and August 2009. Indeed, in April
12 2010 and June 2010, Plaintiff told the doctor that she was averaging only two
13 grand mal seizures per year.[6] (Id. at 361, 373.)

    The record also shows that the ALJ relied on the effectiveness of Plaintiff's
medications at controlling her seizures. (Id. at 34 ("The claimant's seizures are
fairly well controlled on medication").) Tidwell, 161 F.3d at 602 (ALJ may
properly rely on weak objective support, lack of treatment, daily activities
inconsistent with total disability, and helpful medication); Warre v. Comm'r of
Soc. Sec., 439 F.3d 1001, 1006 (9th Cir. 2006) ("[impairments that can be
controlled effectively with medication are not disabling for the purpose of
considering eligibility for SSI benefits"). This is a legally sufficient reason for
discounting Plaintiff's credibility.

    Based on the foregoing, the Court finds the ALJ's credibility finding was
supported by substantial evidence and was sufficiently specific to permit the Court

---

[5] The Court agrees with Plaintiff that there is no evidence she would benefit from surgical intervention. (JS at 21.)

[6] The hearing was held on April 26, 2012. (AR at 43.)

11

to conclude that the ALJ did not arbitrarily discredit Plaintiff's subjective testimony. Thus, there was no error.

## IV.
## **ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: June 18, 2014

HONORABLE OSWALD PARADA
United States Magistrate Judge